No. 05-216C
Judge Braden

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

JERRY C. MILLS, D/B/A/, JCM TIMBER COMPANY

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, MOTION TO DISMISS COUNT TWO OF THE COMPLAINT AND APPENDIX

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

DONALD E. KINNER
Assistant Director

STEVEN M. MAGER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L St. NW
Washington, D.C. 20530
Tele: (202) 616-2377
Steven.Mager@usdoj.gov

June 10, 2005

Attorneys for Defendant

# TABLE OF CONTENTS

PAGE

STATEMENT OF THE ISSUES . . . . . 1

STATEMENT OF THE CASE . . . . . 2

I. Nature of the Case . . . . . 2

II. Statement of Facts . . . . . 2

ARGUMENT . . . . . 10

I. Standards of Review . . . . . 10

II. The Plain Language And Unambiguous Language Of The Contract Precludes JCM's Claims . . . . . 11

III. JCM Fails To Demonstrate The Basic Elements Of A Valid Contract Modification. . . . . . 16

A. JCM Fails To Demonstrate The Existence Of An Unambiguous Offer And Acceptance . . . . . 16

B. JCM Cannot Establish That Any Alleged Modification Was Supported By Consideration . . . . . 18

C. JCM Failed To Harvest Any Timber While The Alleged Modified Rates Would Have Been In Effect. . . . . . 20

IV. The Court Lacks Subject Matter Jurisdiction Under The Tucker Act To Entertain the Second Count (Specific Performance) of JCM's Complaint . . . . . 21

CONCLUSION . . . . . 23

## TABLE OF AUTHORITIES

**CASES:** **PAGE(S)**

Alaska Lumber & Pulp Co. v. Madigan,
2 F.3d 389 (Fed. Cir. 1993) . . . . . . . . . . 11

Alder Terrace, Inc. v. United States,
161 F.3d 1372 (Fed. Cir. 1998) . . . . . . . . . . 10

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) . . . . . . . . . . 10

Aviation Contractor Employees, Inc. v. United States,
945 F.2d 1568, 1574 (Fed. Cir. 1994) . . . . . . . . . . 18-19

Bighorn Lumber Co. v. United States,
49 Fed. Cl. 768 (2001) . . . . . . . . . . 14

Bowen v. United States,
49 Fed. Cl. 673 (2001), aff'd,
292 F.3d 1383 (Fed. Cir. 2002) . . . . . . . . . . 11

Craft Mach. Works, Inc. v. United States,
926 F.2d 1110 (Fed. Cir. 1991) . . . . . . . . . . 11

Delco Electronics Corp. v. United States,
12 Cl. Ct. 367 (1987) . . . . . . . . . . 17

Dynalectron Corp. v. United States,
4 Cl. Ct. 424, aff'd,
758 F.2d 665 (Fed. Cir. 1984) (table) . . . . . . . . . . 21

Fidelity Construction Co. v. United States,
700 F.2d 1379 (Fed. Cir.), cert. denied,
464 U.S. 826 (1983) . . . . . . . . . . 21-22

First Hartford Corp. v. United States,
194 F.3d 1279 (Fed. Cir. 1999) . . . . . . . . . . 22

Gardiner, Kamya, & Associates, P.C. v. Jackson,
369 F.3d 1318 (Fed. Cir. 2004) . . . . . . . . . . 19

Grumman Data Sys. Corp. v. Dalton,
88 F.3d 990 (Fed. Cir. 1996) . . . . . . . . . . 11

**CASES:** **PAGE(S)**

Hunt Constr. Group, Inc. v. United States,
48 Fed. Cl. 456 (2001), aff'd,
281 F.3d 1369 (Fed. Cir. 2002) . . . . . 11

Lomas & Nettleton Co. v. United States,
1 Cl. Ct. 641 (1982), aff'd,
909 F.2d 1495 (Fed. Cir. 1990) (Table) . . . . . 17

Lucas v. United States,
25 Cl. Ct. 298 (1992) . . . . . 16-17

McNutt v. General Motors Acceptance Corp.,
298 U.S. 178 (1936) . . . . . 10

Mingus Constructors, Inc. v. United States,
812 F.2d 1387 (Fed. Cir. 1987) . . . . . 10

Paxson Elec. Co. v. United States,
14 Cl. Ct. 634 (1988) . . . . . 10

Precision Pine & Timber, Inc. v. United States,
63 Fed. Cl. 122 (2004) . . . . . 14

Singleton v. United States,
6 Cl. Ct. 156 (1984) . . . . . 17

Stone Forest Indus. v. United States,
32 Fed. Cl. 424 (1994) . . . . . 11

Sweats Fashions, Inc. v. Pannill Knitting Co.,
833 F.2d 1560 (Fed. Cir. 1987). . . . . . 10

Total Med. Mgmt., Inc. v. United States,
104 F.3d 1314 (Fed. Cir. 1997) . . . . . 16

Trauma Serv. Group v. United States,
104 F.3d 1321 (Fed. Cir. 1997) . . . . . 10-11

United States v. King,
395 U.S. 1 (1969) . . . . . 22

United States v. Mitchell,
445 U.S. 535 (1980) . . . . . 11, 21

**CASES:** **PAGE(S)**

United States v. Testan,
424 U.S. 392, 399 (1976) . . . . . . . . . . 21, 22

Varilease Tech. Group, Inc. v. United States,
289 F.3d 795 (Fed. Cir. 2002) . . . . . . . . . . 11

**STATUTES:**
16 U.S.C. § 1600 . . . . . . . . . . 12

28 U.S.C. § 1491 . . . . . . . . . . 22, 23

**REGULATIONS:**
69 Fed. Reg. 18,814 (Apr. 9, 2004) . . . . . . . . . . 8, 13

36 C.F.R. § 223.33 (2003) . . . . . . . . . . 12

36 C.F.R. § 223.112 (2003) . . . . . . . . . . 13

36 C.F.R. § 223.112 (2004) . . . . . . . . . . 13

36 C.F.R. § 223.115 (2003) . . . . . . . . . . 12

**MISCELLANEOUS:**

RCFC 12(b)(1) . . . . . . . . . . 1, 10

RCFC 56 . . . . . . . . . . 1

RESTATEMENT (SECOND) OF CONTRACTS (1981) . . . . . . . . . . 16-17, 19

J. CIBINIC & R. NASH, JR., FORMATION OF GOVERNMENT CONTRACTS (2d ed. 1985) . . . . . . . . 19

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| JERRY C. MILLS, D/B/A/, JCM TIMBER COMPANY, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 05-216C (Judge Braden) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT,**
**OR, IN THE ALTERNATIVE, MOTION TO DISMISS COUNT TWO OF THE COMPLAINT**

Pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC") defendant, the United States, respectfully requests that the Court grant the defendant summary judgment with regard to plaintiff's complaint. In the alternative, pursuant to RCFC 12(b)(1) defendant respectfully requests that the Court dismiss count two of plaintiff's complaint (specific performance) for lack of subject matter jurisdiction. In support of defendant's motion, we rely upon the complaint and its attachments and the following brief and its attachments.

**STATEMENT OF THE ISSUES**

(1) Whether the contract at issue explicitly limits the relief to be provided to plaintiff in the event of contract suspension to out-of-pocket expenses, and whether plaintiff has accordingly failed to demonstrate a claim for unpaid out-of-pocket expenses.

(2) Whether plaintiff fails to demonstrate the basic elements of a valid contractual modification.

(3) In the event that this Court does not dismiss plaintiff's complaint in its entirety, whether this Court has subject matter jurisdiction over the second count of plaintiff's complaint (specific

performance).

## STATEMENT OF THE CASE

### I. Nature Of The Case

On or about February 11, 2005 plaintiff Jerry C. Mills, doing business as JCM Timber Company ("plaintiff" or "JCM"), filed a complaint against the United States ("defendant" or the "Government") with this Court, alleging two counts. Count one of plaintiff's complaint sought damages in the amount of $101,855.09 against the United States for breach of contract. Compl. ¶¶ 23-25. Count two of plaintiff's complaint re-asserted the claim for breach of contract, but sought specific performance in the alternative to monetary compensation. Compl. ¶¶ 26-28. For the purposes of this motion, the Government will treat the factual allegations contained in the Complaint as true.

### II. Statement Of Facts[1]

On or about March 1, 2000, United States Department of Agriculture, Forest Service (the "Forest Service") issued a request for sealed bids for the advertised sale of timber located in the Desoto National Forest, Chickasawhay Ranger District in Greene County, Mississippi. Compl. ¶ 6; Compl. App. A.[2] Pursuant to this request, on or about March 15, 2000, JCM was awarded timber sale contract (the "contract") #303599. See Compl. App. B. The contract set the bid rates (flat) for timber as follows:

---

[1] For the purposes of this motion, defendant will treat the allegations of JCM's complaint as true. In the event that this Court does not grant defendant's motion for summary judgment or, in the alternative, motion to dismiss count two of the complaint, the United States reserves the right to contest the individual allegations of the complaint.

[2] "Compl. App. __" refers to the appendix to plaintiff's complaint.

| | |
|---|---|
| Pine Sawtimber | $138.00 per CCF |
| Hardwood Sawtimber | $ 18.00 per CCF |
| Pine Small Roundwood | $ 29.00 per CCF |
| Hardwood Small Roundwood | $ 3.00 per CCF |

Compl. ¶ 8; Compl. App. B24, ¶ AT5b.

The request for bids provided that the awardee would be required to construct several specified roads under the contract. Compl. App. A3-A4, ¶ 8. See also Compl. App. B10, ¶ AT9; B27, ¶ BT5.2. The request for bids permitted small businesses to opt to have the Forest Service construct the required roads. Compl. App. A10 ("Bidders qualifying as small business concerns under the Small Business Act may, when submitting a bid, elect for the Forest Service to build permanent roads."). JCM did not indicate that it wished to have the Forest Service construct the specified roads. Id. at A18, ¶ 18. The request for bids provided that the failure to make such an election could not be changed subsequent to the opening of bids. Id. In the event that a awardee elected to build the roads, the contract did not treat the costs of building the road as a separately compensable expense. Compl. App. B, ¶¶ AT9, AT10. See also Def. App. 20 (Declaration of Robert Smiley).[3] The request for bids specifically had warned bidders that "[t]he advertised rate does not include the estimated cost of specified road construction. The estimated road construction cost has been included in the appraisal as a cost that the purchaser will incur. The purchaser will be responsible for the road construction cost and WILL NOT receive credit towards stumpage costs for this expense, i.e. THIS SALE DOES NOT INCLUDE PURCHASER CREDIT and bidders should consider the cost of road construction when developing their bids." Compl. App. A2. On or about July 19, 2000, JCM completed construction of the specified roads.

[3] "Def. App. __" refers to the appendix attached to defendant's motion for summary judgment.

Compl. App. C1.

On October 20, 2000, the Forest Service suspended performance of the contract, pursuant to CT 6.01(a). Compl. App. D1. Specifically, the contracting officer stated that

> . . . the Sierra Club has filed a lawsuit against the Forest Service. Pursuant to contract provision CT 6.01(a), this is your notice to suspend all logging operations on the timber sales contract. Because the complaint specifically names the project analysis and decision documents responsible for this timber sale, which implements a portion of that project decision, I will not allow logging to proceed pending action by the court.

Id. Section CT 6.01 of the contract permitted the Forest Service to suspend a timber sale contract and provided that the sole relief available to a contractor for such suspension would be an adjustment the term of the contract and the reimbursement of out-of-pocket expenses incurred as a "direct" result of the delay. Specifically, CT 6.01 states:

> Interruption Or Delay Of Operations. (10/96) Purchaser agrees to interrupt or delay operations under this contract, in whole or in part, upon the written request of the Contracting Officer:
> (a) To prevent serious environmental degradation or resource damage that may require contract modification under CT8.3 or termination pursuant to CT8.2;
> (b) To comply with a court order, issued by a court of competent jurisdiction; or
> (c) Upon determination of the appropriate Regional Forester, Forest Service, that conditions existing on this sale are the same as, or nearly the same as, conditions existing on sale(s) named in such an order described in (b).
>
> Purchaser agrees that in the event of interruption or delay of operations under this provision, that its sole and exclusive remedy shall be (I) Contract Term Adjustment pursuant to BT8.21, or (ii) when such an interruption or delay exceed 30 days during the Normal Operating Season, Contract Term Adjustment pursuant to BT8.21, plus out-of-pocket expenses incurred as a direct result of interruption or delay of operations under this provision. Out-of-pocket expenses do not include lost profits, attorney's fees,

> replacement cost of timber, or any other anticipatory losses suffered by Purchaser. Purchaser agrees to provide receipts or other documentation to the Contracting Officer which clearly identify and verify actual expenditures.

Compl. App. B46, ¶ CT6.01 (emphasis added). The definition of "out-of-pocket expenses" explicitly excluded lost profits, attorney's fees, replacement cost of timber or any other anticipatory losses. Id.

On December 4, 2000, the Forest Service refunded a portion of JCM's down payment ($35,600) to JCM,[4] pursuant to CT 4.229. Def. App. 1. Section CT 4.229 of the contract provided, in pertinent part,

> When, pursuant to CT 6.01 . . ., Contracting Officer requests Purchaser to interrupt or delay all or any portion of Purchaser's operations under the contract for more than 60 consecutive days, the downpayment amount being held on deposit may be temporarily reduced upon the written request of the Purchaser or at the discretion of the Contracting Officer. For the period of the interruption or delay, the downpayment on deposit may be reduced to $1,000. . . .
>
> . . . . Upon Purchaser's receipt of Bill for Collection and written notice from Contracting Officer that the basis for the interruption or delay no longer exists, Purchaser shall restore the downpayment to the full amount shown in CT4.220# within 30 days after the date the Bill for Collection was issued. Purchaser shall not resume contract operations until the downpayment amount is fully restored. Purchaser's failure to fully restore the downpayment amount within 30 days after the date the Bill for Collection was issued is a material breach of the contract. Purchaser shall have 30 days to remedy the breach or the contract will be terminated.

Compl. App. B-37, ¶ CT4.229. JCM was reminded that this refund would need to be restored prior to resuming logging operations. Id.

[4] The contracting officer only retained $1,000 of the deposit. Further, the contracting officer refunded an unencumbered balance of $2,898.16. Def. App. 1.

On or about February 25, 2003, the contracting officer informed JCM that the suspension put in place on October 20, 2000 was lifted. Compl. App. E. The contracting officer provided that logging operations could resume as soon as JCM restored the balance of the down payment required by the contract. Id. Further, the contracting officer noted that the termination date of the contract had been adjusted to April 11, 2005 to reflect for the lost time. Id.

On or about April 16, 2003, JCM sent a certified claim letter to the contracting officer. Compl. App. F. See also Def. App. 7-18. In this letter, JCM asserted that timber prices had fallen dramatically during the suspension, that JCM had been advised that it was unlikely to receive a rate redetermination, and that as a result of the "handling of this matter and the loss of the contract," JCM had suffered a loss of $173,961.31. Compl. App. F2. The claimed costs included the cost of road construction, interest upon the construction cost, lost interest upon the down payment, road taxes due to the state of Mississippi, labor and equipment costs, timber cruise, lost profits, and attorney's fees. Id. at F3. See also Def. App. 8, 10-18. JCM did not indicate the portion of the contract which permitted it to recover all such costs in the event of suspension. Further, JCM was in error in asserting that it had "lost" the contract, since the contract had not been terminated by the Government.

On or about May 14, 2003, the contracting officer sent a follow up letter regarding repayment of the deposit, and a past due bill for collection in the amount of $35,743.67, which included $118.67 in interest and $25.00 for administrative costs. Def. App. 22-26. The due date for this bill was June 13, 2003. Id. at 22.

On or about June 3, 2003, the contracting officer sent a letter to JCM stating that he would prepare an appraisal to determine new proposed contract rates. Compl. App. G. He also

provided that JCM could submit a claim for out-of-pocket expenses incurred during the suspension period. Id. In the event that the parties came to an agreement regarding these matters, the contracting officer indicated that he would prepare an agreement to modify the contract, which would include a stipulation that JCM would relinquish any claims under the contract. Id.

On or about June 18, 2003, JCM responded that it desired to have the Forest Service redetermine the contract rate for unharvested timber. Compl. App. H. JCM attempted to link the repayment of the deposit with the redetermination of rates, noting that "upon completion of the redetermination, Mr. Mills is prepared to pay the contract down payment." Id. JCM also indicated that it had set forth its claim for expenses in the April 10, 2003 letter. Id.

On or about July 7, 2003, the contracting officer sent a letter to JCM indicating that he was still processing JCM's claim. Compl. App. I. Nevertheless, the contracting officer indicated that he had completed a re-appraisal of the base rates under the contract, and quoted the anticipated contract rates that he believed would apply "if all parties accept a settlement." Id. The contracting officer did not enclose any agreement to modify the contract with this letter.

On or about July 11, 2003, the contracting officer sent another follow up letter regarding repayment of the deposit, and a bill for collection in the amount of $36,421.33, which included $227.33 in interest, $50.00 for administrative costs, and a $534.00 penalty. Compl. App. J. The contracting officer noted that the failure to repay the deposit would be a material breach of the contract pursuant to section BT9.3 of the contract, and that he had "no authority under the contract to delay payment until settlement is resolved." Id. at J1. The contracting officer explicitly stated that JCM had "30 calendar days to remedy this breach or the contract will be

terminated." On or about August 1, 2003, JCM paid this bill. Compl. App. K.

On or about May 7, 2004, the contracting officer sent an agreement to modify the contract to JCM. Compl. App. L. This proposed agreement provided for a two-step modification to the contract. First, the contract was to be amended to incorporate a new interim rule that permitted the modification of rates due to contract suspension.[5] Id. at L2. See 69 Fed. Reg. 18,814 (Apr. 9, 2004). Second, the bid rates were to be modified using standard Forest Service techniques to:

| | |
|---|---|
| Pine Sawtimber | $138.00 per CCF |
| Hardwood Sawtimber | $ 18.00 per CCF |
| Pine Small Roundwood | $ 11.91 per CCF |
| Hardwood Small Roundwood | $ 3.00 per CCF |

Compl. App. L2.

On or about May 21, 2004, JCM responded by asserting that the rates in the May 7, 2004 proposed agreement were not consistent with the rates mentioned in the July 7, 2003 letter. Compl. App. M. On or about July 7, 2004, the contracting officer replied to JCM's concerns, noting that the July 7, 2003 rates were merely tentative rates, which could not have been finalized until the Forest Service received the authority to do redeterminations as a result of delay. Compl. App. N. Such authorization did not exist under the contract until the Forest Service's regulations were amended in 2004, and such authorization was incorporated into the contract. See Compl. App. L1 (noting that the redetermined rates were "calculated based on standard Forest Service methods in affect 45 days prior to the ruling of April 9, 2004.") Further, the contracting officer noted that no agreement to modify the contract (Form FS-2400-9) had been previously signed by

[5] Section BT8.3 of the contract explicitly permitted the Forest Service to modify the contract to provide for the "exercise of any authority hereinafter granted by law or Regulation of the Secretary of Agriculture if such authority is then generally being applied to Forest Service timber sale contracts." Compl. App. B18, ¶ BT8.3.

the parties. Compl. App. N. The contracting officer stated that if he did not hear from JCM by July 14, 2004, he would assume that JCM was not interested in modifying the contract. Id.

On or about July 14, 2004, JCM signed the May 7, 2004 agreement to modify the contract. Compl. App. L2. The signed agreement modified the bid rates to:

| | |
|---|---|
| Pine Sawtimber | $138.00 per CCF |
| Hardwood Sawtimber | $ 18.00 per CCF |
| Pine Small Roundwood | $ 11.91 per CCF |
| Hardwood Small Roundwood | $ 3.00 per CCF |

Id.

On or about November 12, 2004, the contracting officer issued a final decision with regard to JCM's $178,961.31 claim for damages allegedly incurred as a result of the interruption of the contract. Def. App. 2-6. The contracting officer granted in part, and denied in part JCM's claim. Specifically, the contracting officer granted JCM's claim for labor and equipment costs in full as a move-in and move-out cost. Id. at 5. The contracting officer denied JCM's claims for costs related to road construction, interest upon the construction cost, lost interest upon the down payment, road taxes due to the state of Mississippi, timber cruise, lost profits, and attorney's fees, upon the grounds that these costs were not out-of-pocket expenses incurred as a direct result of the interruption. Id. at 4-5.

The contract at issue in this case is still pending, and JCM is able to harvest timber at the agreed modified rate under the contract. Def. App. 20-21. The current expiration date on the contract is November 30, 2007. Def. App. 19.

## ARGUMENT

### I. Standards of Review

This Court has consistently held that when there is no genuine dispute regarding a material fact, and the moving party is entitled to judgment as a matter of law, a motion for summary judgment will be granted. See Paxson Elec. Co. v. United States, 14 Cl. Ct. 634, 642 (1988) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)); accord Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1390 (Fed. Cir. 1987). A genuine dispute exists where the Court could render a verdict in favor of the non-movant, based upon the evidence. See Anderson, 477 U.S. at 248; Sweats Fashions, Inc. v. Pannill Knitting Co., 833 F.2d 1560, 1562 (Fed. Cir. 1987).

For the United States to prevail upon its motion for summary judgment, the Government only must demonstrate its entitlement to judgment as a matter of law, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. See Anderson, 477 U.S. at 248. Here, there is no genuine dispute between the parties regarding any material fact, and upon the undisputed facts of record, the United States is entitled to judgment as a matter of law.

For the purposes of determining whether or not to grant a motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), the non-jurisdictional factual allegations of the complaint will be presumed true and read in the light most favorable to the plaintiff, but the burden of establishing the Court's jurisdiction nevertheless will remain squarely with the plaintiff. See McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1377 (Fed. Cir. 1998); Trauma Serv. Group v.

United States, 104 F.3d 1321, 1324 (Fed. Cir. 1997); Bowen v. United States, 49 Fed. Cl. 673, 675 (2001) (noting that the plaintiff bears the burden of proof upon a motion to dismiss for lack of jurisdiction), aff'd, 292 F.3d 1383 (Fed. Cir. 2002). Jurisdiction in this Court must be construed strictly and all conditions placed upon such a grant must be satisfied before the Court may accept jurisdiction. United States v. Mitchell, 445 U.S. 535, 538 (1980).

## II. The Plain Language And Unambiguous Language Of The Contract Precludes JCM's Claims

The contract entered into between JCM and the Forest Service did not permit any modification of the bid rates due to a suspension under CT 6.01 of the contract. Accordingly, under the express language of the contract, defendant is entitled to summary judgment as a matter of law.

Whether or not the contract permitted JCM to a modification of bid rates as a result of a suspension is a matter of contract interpretation. The interpretation of provisions of a Government contract generally is a matter of law. Grumman Data Sys. Corp. v. Dalton, 88 F.3d 990, 997 (Fed. Cir. 1996); Alaska Lumber & Pulp Co. v. Madigan, 2 F.3d 389, 392 (Fed. Cir. 1993). Consequently, issues of contract interpretation are well suited to disposition by summary judgment. Varilease Tech. Group, Inc. v. United States, 289 F.3d 795, 798 (Fed. Cir. 2002); Hunt Constr. Group, Inc. v. United States, 48 Fed. Cl. 456, 459 (2001), aff'd, 281 F.3d 1369 (Fed. Cir. 2002). See also Stone Forest Indus. v. United States, 32 Fed. Cl. 424, 426 (1994) ("It is beyond dispute that the interpretation of the terms of a contract is a matter of law, not a matter of fact, and a court may properly order summary judgment on these issues") (citing Craft Mach. Works, Inc. v. United States, 926 F.2d 1110, 1113 (Fed. Cir. 1991)).

On October 20, 2000, the Forest Service suspended performance of the contract, pursuant to section CT 6.01(a). Compl. App. D1. Section CT 6.01 of the contract unambiguously provides that a "Contract Term Adjustment" and out-of-pocket expenses incurred as a "direct" result of interruption or delay are to be the "sole and exclusive remedy" for such delay. Compl. App. B46, ¶ CT6.01. No where did the contract provide for an adjustment of rates as a result of delay.

Indeed, the contract only allowed for an adjustment of rates in three prescribed instances. Rates could be redetermined: 1) pursuant to a scheduled rate redetermination, 2) because of environmental modifications under the Forest and Rangeland Renewable Resource Planning Act of 1974 (16 U.S.C. § 1600), or 3) after catastrophic damage to the timber. Compl App. B34-B35, ¶¶ CT3.31, CT3.312, CT3.32. None of these situations are applicable to this case. See, e.g., Compl. App. AT7 (noting that there were no scheduled rate redeterminations under the contract). While some timber sale contracts also allowed for an emergency rate redetermination for changes in the market or other economic conditions, the emergency rate redetermination clause explicitly was not applied to the contract at issue in this case. Id. at B7, ¶ BT3.311 (emergency rate redetermination); B30, ¶ AT9 (providing that BT3.311 did not apply to the contract).

The regulations governing timber sales that were in effect at the time of the alleged redetermination further reflect the limited circumstances under which the Forest Service was able to do rate redeterminations. In 2003, the regulations specifically provided for a rate redetermination on sales of seven years duration upon a predetermined schedule. 36 C.F.R. § 223.33 (2003). The regulations also allowed for rate redeterminations when a purchaser had

diligently performed a contract and sought an extension if, at the time of the scheduled contract termination, at least 75 percent of the contract volume had been removed, and all specified road construction were completed. 36 C.F.R. § 223.115 (2003). However, prior to 2004, the regulations did not grant the contracting officer authority to provide for a rate redetermination to reflect changed market conditions when an existing timber sale contract was merely suspended because of administrative appeals or litigation. Compare 36 C.F.R. § 223.112 (2004) with 36 C.F.R. § 223.112(b) (2003).

In 2004, the regulations were amended to address this situation. On April 9, 2004, the Forest Service published an interim final rule providing that:

> Timber sale contracts awarded after October 1, 1995, that have been suspended for more than 90 days, during the normal operating season, at no fault of the purchaser, because of administrative appeals or litigation, that did not include contract provisions for rate redeterminations may be modified at the request of the timber sale purchaser to include a rate redetermination for the remaining unharvested volume to reflect significant decreases in market value during the period of delay. Rates in effect at the time of the suspension will be redetermined in accordance with the standard Forest Service methods in effect 45 days prior to the rate redetermination.

69 Fed. Reg. 18,814, 18,815 (Apr. 9, 2004). See 36 C.F.R. § 223.112(b) (2004). The regulatory change allowing for a redetermination of rates in the event of suspension, however, was not promulgated until approximately 9 months after the alleged July 2003 redetermination at issue in this case.

Further, plaintiff has failed to demonstrate that most of the claimed expenses were

compensable "out-of-pocket" expenses.[6] Compensable out-of-pocket expenses are those expenses that are "incurred as a direct result of interruption or delay of operations." Pl. App. B46, ¶ CT6.01. While the contract does not further define "out-of-pocket" expenses, it does provide that "out-of-pocket expenses do not include lost profits, attorney's fees, replacement cost of timber, or any other anticipatory losses suffered by Purchaser." Id. The clause also provides that the contractor "agrees to provide receipts or other documentation to the Contracting Officer which clearly identify and verify actual expenditures." In the past, this Court has construed "'out-of-pocket expenses' to be 'things of the same general kind of class as those specifically mentioned, i.e., losses due to plaintiff's inability to harvest timber under the contract.'" Precision Pine & Timber, Inc. v. United States, 63 Fed. Cl. 122, 140 (2004) (quoting Bighorn Lumber Co. v. United States, 49 Fed. Cl. 768, 771 (2001)).

While the contracting officer's November 12, 2004 final decision found that JCM was entitled to recover $2,640 for labor and equipment costs as move-in/move out expenses, the contracting officer correctly denied the majority of JCM's claims for the failure to demonstrate that they were compensable out-of-pocket expenses.

Specifically, JCM cannot demonstrate that the incurred cost of road construction was a direct result of the interruption of the contract, and section 6.01 only permits the recovery of costs "incurred as a direct result of interruption or delay of operations." Indeed, the contract

---

[6] On or about November 12, 2004, the contracting officer issued a final decision with regard to JCM's $178,961.31 claim for damages allegedly incurred as a result of the interruption of the contract. Def. App. 2-6. JCM's complaint does not argue that this decision was erroneous, nor has JCM referenced or attached a copy of the final decision. Nevertheless, the damages sought for a breach of an alleged rate redetermination agreement appear to be identical to those damages claimed as "out-of-pocket" expenses for the interruption.

required road construction, and did not provide for the separate compensation for the costs of road construction. The request for bids had warned that "[t]he advertised rate does not include the estimated cost of specified road construction. The estimated road construction cost has been included in the appraisal as a cost that the purchaser will incur. The purchaser will be responsible for the road construction cost and WILL NOT receive credit towards stumpage costs for this expense, i.e. THIS SALE DOES NOT INCLUDE PURCHASER CREDIT and bidders should consider the cost of road construction when developing their bids." Compl. App. A2. The interruption did not directly cause JCM to incur road construction expenses; rather, JCM incurred those expenses pursuant to the contract's separate requirement for roads. Similarly, JCM's claim for interest upon the cost of construction,[7] and Mississippi state taxes upon the road[8] were properly not considered an out-of-pocket expense incurred as a direct result of the interruption.

JCM's claim for lost interest upon the down payment was wholly anticipatory in nature. The contract provides that "out-of-pocket expense do not include . . . any other anticipatory losses." Compl. App. B46, ¶ 6.01. JCM also failed to demonstrate or provide any evidence that the timber cruise[9] was a direct result of the delay, and not otherwise part of contract performance.

---

[7] The contracting officer's final decision left open the possibility that JCM might be compensated for this loss, to the extent that JCM could provide substantive documentation that the loss of interest was a direct result of the interruption. The contract required that the contractor "provide receipts or other documentation to the Contracting Officer which clearly identify and verify actual expenditures."

[8] Further, the contracting officer noted that JCM had only provided a tax bill, and not a receipt that was evidence of payment of a direct expense. Under the contract, the contractor had agreed "to provide receipts or other documentation to the Contracting Officer which clearly identify and verify actual expenditures." Compl. App. B46, ¶ 6.01.

[9] A timber cruise is an inspection of the timber stand made to estimate the volume, quality and value of the trees.

JCM's claims that it is entitled to lost profits and attorney's fees as a result of the interruption are expressly precluded by the language of the contract, which unambiguously states that "out-of-pocket expenses do not include lost profits, [or] attorney's fees." Pl App. B46, ¶ CT6.01.

Accordingly, because the contract does not permit a modification of the bid rates, and because the expenses claimed by JCM were not otherwise compensable "out-of-pocket" expenses under the contract, the Court should grant the Government's motion for summary judgment.

## III. JCM Fails To Demonstrate The Basic Elements Of A Valid Contract Modification.

Any modification of a contract must meet the same basic prerequisites of any other contract. These prerequisites include "a mutual intent to contract including offer, acceptance and consideration, and authority upon the part of the government representative who entered into or ratified the agreement to bind the United States in contract." Total Med. Mgmt., Inc. v. United States, 104 F.3d 1314, 1319 (Fed. Cir. 1997). Contrary to JCM's allegations, Compl. ¶¶ 16-18, the contracting officer did not modify the contract with a rate redetermination before 2004. None of the prerequisites of a binding modification occurred in 2003. Because JCM cannot establish that the alleged modification meets these basic requirements, the United States is entitled to summary judgment in this matter.

### A. JCM Fails To Demonstrate The Existence Of An Unambiguous Offer And Acceptance

An offer to contract is "'the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will

conclude it.'" Lucas v. United States, 25 Cl. Ct. 298, 304 (1992) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 24 (1981)). An offer to contract must be definitive and sufficient to demonstrate an intent to enter into a contract. Singleton v. United States, 6 Cl. Ct. 156, 166 (1984). "The offeror may prescribe the precise method of acceptance . . . and acceptance must occur within those parameters and within the time specified." Delco Electronics Corp.v. United States, 12 Cl. Ct. 367, 370 (1987) (citing Lomas & Nettleton Co. v. United States, 1 Cl. Ct. 641, 644 (1982), RESTATEMENT (SECOND) OF CONTRACTS § 41 (1981)), aff'd, 909 F.2d 1495 (Fed. Cir. 1990) (Table). None of the documents referenced by JCM in its complaint, however, demonstrate an unambiguous offer to modify the bid rates, as alleged by JCM in its complaint. Indeed, the language indicates that when the Forest Service was prepared to modify the contract, the contracting officer indicated that he would send JCM a separate agreement to modify, to be signed by both of the parties. No such agreement was sent until May 7, 2004.

On or about June 3, 2003, the contracting officer sent a letter to JCM stating in part that he would be preparing an appraisal to determine new proposed contract rates. Compl. App. G. However, this letter also provided that, in the event that the parties came to an agreement regarding these matters, the contracting officer would prepare a separate agreement to modify the contract, which would include a stipulation that JCM would relinquish any claims under the contract. Id. No such agreement was sent prior to 2004. Further, while on or about July 7, 2003, the contracting officer sent a letter to JCM indicating that he had completed a re-appraisal of the base rates under the contract, and quoting the anticipated contract rates that he believed would apply, he only provided that these rates would be effective "if all parties accept a settlement" and again did not enclose any actual agreement to modify the contract. Compl. App. I. While the

contracting officer may have evidenced an intention to modify the contract in the future, it is clear from the text of the letters that the letters were not regarded as actual modifications themselves.

Indeed, it is not even clear that JCM's repayment of its deposit under the contract could serve as an unambiguous acceptance of the alleged modified rates. While JCM's June 18, 2005 letter previously provided that "upon completion of the redetermination, Mr. Mills is prepared to pay the contract down payment," the contracting officer made clear in his subsequent demand for the repayment of the deposit that the settlement of JCM's claims and the repayment of the deposit were entirely separate matters. Compl. App. J ("I have no authority to delay payment until settlement is resolved."). Subsequent to the contracting officer's statement noting that settlement and repayment were not linked, there is no indication from JCM that it disagreed with this characterization; JCM simply appears to have repaid the deposit without comment. Compl. App. K.

Accordingly, because JCM fails to demonstrate an unambiguous offer and acceptance, plaintiff's claim that the July 7, 2003 letter modified the contract should be rejected.

### B. JCM Cannot Establish That Any Alleged Modification Was Supported By Consideration

It is well established that any modification must be supported by consideration. In this regard, the Federal Circuit has stated that

> [i]n Government contracts, [lack of consideration] most often occurs when the Government modifies a contract to the benefit of contractor but receives no additional or different promise or performance in return. Under Restatement, Second, Contracts § 73 (1981), such modifications are without consideration since they involve performance of a pre-existing duty which is neither

doubtful nor the subject of honest dispute.

Aviation Contractor Employees, Inc. v. United States, 945 F.2d 1568, 1574 (Fed. Cir. 1994) (quoting J. CIBINIC & R. NASH, JR., FORMATION OF GOVERNMENT CONTRACTS 189 (2d ed. 1985)) (emphasis omitted).

JCM implies that the repayment of the deposit due under the timber sales contract served as consideration for the modification of that contract. Compl. ¶ 18. However, the repayment of the deposit was already required under contract provisions CT 4.220 and CT 4.229. Section CT 4.229 specifically states that "[u]pon Purchaser's receipt of Bill for Collection and written notice from Contracting Officer that the basis for the interruption or delay no longer exists, Purchaser shall restore the downpayment to the full amount shown in CT4.220# within 30 days after the date the Bill for Collection was issued." It is well settled that the payment of an already existing obligation cannot constitute valid consideration. See Gardiner, Kamya, & Associates, P.C. v. Jackson, 369 F.3d 1318, 1322 (Fed. Cir. 2004) (citing RESTATEMENT (SECOND) OF CONTRACTS § 73 (1981)).

Further, as noted above, while JCM attempted to link payment of the deposit to a redetermination of rates, the contracting officer made clear that the payment of this deposit was due under the timber sale contract regardless of any dispute over the rates. Specifically, on July 11, 2003, the contracting officer noted that "[f]ailure to pay is a material breach of the contract pursuant to provision BT9.3. I have no authority under the contract to delay payment [of the deposit] until the settlement is resolved. Therefore you have 30 calendar days to remedy this breach or the contract will be terminated." Compl. App. J2. Indeed, on December 4, 2000, when the contracting officer refunded a portion of JCM's deposit pursuant to section CT 4.229 of the

contract, the contracting officer had reminded JCM that the deposit would need to be restored prior to resuming logging operations. Payment of the deposit was required whether or not the parties were able to or did reach an agreement regarding modification of the rates.

Alternatively, plaintiff asserts that the consideration for the alleged modification was JCM's decision to "foregoing his Claim for damages under the Original Contract." Compl. ¶ 24. However, as noted previously, JCM had no contractual right to a rate redetermination as a result of the suspension. Waiving the right to pursue claims that one does not have the right to pursue in the first instance cannot serve as valid consideration for a modification. Further, JCM did not forego or renounce any legitimate claim for out-of-pocket expenses. Upon several occasions the Forest Service reminded JCM that it still had a claim for out-of-pocket expenses. See Compl. App. G, I, L, N.

Because any alleged modification of the rates was not supported by consideration, JCM's claim that the contract was modified must fail.

### C. JCM Failed To Harvest Any Timber While The Alleged Modified Rates Would Have Been In Effect.

Finally, even if the Court were to conclude that the contract permitted the relief sought by JCM, and that the contract had been modified to allow for the rates sought by JCM, JCM failed to harvest any timber when these alleged modified rates would have been in effect. Accordingly, JCM was not damaged by any purported breach of an agreement redetermining the contract bid rates.

Between July 7, 2003, the date of the alleged offer to modify the contract rates, and July 14, 2004, JCM harvested no timber. Def. App. 20. On July 14, 2004, JCM entered into a

modification of the contract, redetermining the bid rates as:

| | |
|---|---|
| Pine Sawtimber | $138.00 per CCF |
| Hardwood Sawtimber | $ 18.00 per CCF |
| Pine Small Roundwood | $ 11.91 per CCF |
| Hardwood Small Roundwood | $ 3.00 per CCF |

Compl. App. L2.

By not harvesting any timber during the period between the original alleged modification and the subsequent modification, JCM was not damaged by any purported failure to implement the alleged July 7, 2003 rates. Upon agreeing to the subsequent modification, JCM lost the ability to claim that the alleged failure to honor the purported July 7, 2003 modification is continuing to damages them.

## IV. The Court Lacks Subject Matter Jurisdiction Under The Tucker Act To Entertain The Second Count (Specific Performance) Of JCM's Complaint

This Court is a court of limited jurisdiction. Dynalectron Corp. v. United States, 4 Cl. Ct. 424, 428, aff'd, 758 F.2d 665 (Fed. Cir. 1984) (table). The Court's jurisdiction to entertain claims and to grant relief depends upon, and is circumscribed by, the extent to which the United States has waived its sovereign immunity. United States v. Testan, 424 U.S. 392, 399 (1976). The waiver of sovereign immunity, and hence the consent to be sued, must be expressed unequivocally and cannot be implied. Id. Jurisdiction in this Court must be construed strictly and all conditions placed upon such a grant must be satisfied before the Court may accept jurisdiction. United States v. Mitchell, 445 U.S. 535, 538 (1980). As the United States Court of Appeals for the Federal Circuit has stated, "[i]n construing a statute waiving the sovereign immunity of the United States, great care must be taken not to expand liability beyond that which

was explicitly consented to by Congress." Fidelity Construction Co. v. United States, 700 F.2d 1379, 1387 (Fed. Cir.), cert. denied, 464 U.S. 826 (1983).

In this Court, consent to suit is generally based upon the Tucker Act, 28 U.S.C. § 1491. Testan, 424 U.S. at 397. Pursuant to this statute, sovereign immunity is waived only with respect to "claim[s] against the United States" that are "founded either upon the Constitution or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1).

In its complaint, JCM asserts an alternative claim for specific performance of the alleged "Renegotiated Contract . . . since there exist no bars in equity to such remedy." Compl. ¶¶ 26-28. The Court of Federal Claims, however, is without jurisdiction over claims for specific performance. See First Hartford Corp. v. United States, 194 F.3d 1279, 1294 (Fed. Cir. 1999) (reaffirming that the United States Court of Federal Claims "cannot grant nonmonetary equitable relief such as an injunction or a declaratory judgment, or specific performance."). With certain strictly limited exceptions, there is no provision in the Tucker Act authorizing this Court to order equitable relief. See United States v. King, 395 U.S. 1, 4 (1969) ("cases seeking relief other than money damages from the court of claims have never been 'within its jurisdiction'"). But see 28 U.S.C. § 1491(b)(2) (permitting the Court of Federal Claims to grant declaratory and injunctive relief in bid protest actions). JCM does not allege that its claim falls into one of these limited exceptions; it merely asserts a claim based upon the breach of an alleged contract. Moreover, JCM's claim for specific performance is not "ancillary and collateral" to its claim for money damages, as JCM asserts this theory as an alternative, and not an adjunct, to its claim for money

damages. See 28 U.S.C. § 1491(a)(2). Accordingly, this Court should dismiss the second count of JCM's complaint for lack jurisdiction.

## CONCLUSION

WHEREFORE, defendant requests that the Court enter judgment in its favor, order that the complaint be dismissed, and grant defendant such other and further relief as the Court may deem just and proper.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

/s/ Donald E. Kinner
DONALD E. KINNER
Assistant Director

/s/ Steven M. Mager
STEVEN M. MAGER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L Street, NW
Washington, D.C. 20530
Tele: (202) 616-2377
steven.mager@usdoj.gov

June 10, 2005

Attorneys for Defendant

CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 10th day of June 2005, a copy of the foregoing "Defendant's Motion For Summary Judgment Or, In The Alternative, Motion To Dismiss Count Two Of The Complaint and Appendix" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

I further certify that on this 10th day of June, 2004, I caused to be served by United States mail (first class, postage prepaid) a copy of the foregoing "Defendant's Motion For Summary Judgment Or, In The Alternative, Motion To Dismiss Count Two Of The Complaint" addressed as follows:

Al Shiyou
Attorney-At-Law
PO Box 310
Hattiesburg, MS 39403

/s/ Steven M. Mager
Steven M. Mager
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice

# APPENDIX

**INDEX TO APPENDIX**


| **DOCUMENT** | **PAGE(S)** |
|---|---|
| Letter from Randall W. Smith, Contracting Officer, Forest Service to JCM Timber re: refund of down payment (December 4, 2000) | 1 |
| Final decision from Lynn D. Corbitt, Contracting Officer, Forest Service to JCM Timber (November 12, 2004) | 2-6 |
| Certified claim (with attachments) from Al Shiyou (on behalf of Jerry C. Mills, doing business as JCM Timber) to Randall W. Smith, Contracting Officer, Forest Service (April 16, 2003) | 7-18 |
| Letter from Lynn D. Corbitt, Contracting Officer, Forest Service to JCM Timber re: new termination date for contract (July 29, 2004) | 19 |
| Declaration of Robert Smiley (June 9, 2005) | 20-21 |
| Letter and bill for collection from Debra B. Sheriff, Financial Manager, Forest Service to Jerry C. Mills, JCM Timber re: repayment of deposit (May 14, 2003) | 22-26 |