**No. 05-216C**
**Judge Braden**

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

**JERRY C. MILLS, D/B/A, JCM TIMBER COMPANY,**

**Plaintiff,**

**vs.**

**THE UNITED STATES,**

**Defendant.**

---

# PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, MOTION TO DISMISS COUNT TWO OF THE COMPLAINT

---

**AL SHIYOU**
**SHIYOU LAW FIRM**
**P. O. BOX 310**
**HATTIESBURG, MS 39403**
**(601) 583-6040**
**MSB NO. 6760**

**Attorney for Plaintiff**

**TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS....................2

TABLE OF AUTHORITIES....................3

ARGUMENT....................4-16

I. Standard of Review....................4-6

II. Plaintiff has demonstrated that all the basic elements of a valid contractual modification are present and that said contract should be modified to the lower rates as offered by Defendant's agent on July 7, 2003, and the Government should be estopped from denying same....................6-13

A. Randall Smith's written offer of July 7, 2003, to modify the contract constituted a valid adjustment of rates in spite of the contractual language purportedly limiting such a modification to the three (3) conditions as expressed in CT 3.31, 3.312 and 3.32 of the Contract....................6-11

B. All of the basic elements of a valid contractual modification: offer, acceptance and consideration are present in this case....................11-13

III. Plaintiff should be compensated for road construction costs due to assurances by agents for Defendant that he would receive credit, and Defendant is estopped from denying these assurances....................13-16

CONCLUSION....................17

CERTIFICATE OF SERVICE....................18

# TABLE OF AUTHORITIES

**CASES:** **PAGE(S):**

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 248 (1986)....................4

Thomas Creek Lumber & Log Co. v. United States,
36 Fed. Cl. 220, 235 (Fed Cl. 1996)....................5

Grunman Data Sys. Corp. v. Dalton,
88 F. 3d 990, 997 (Fed. Cir. 1996)....................5

Roberts v. United States,
357 F. 2d 938, 948 (Ct. Cl. 1966)....................5

Southern California Edison Co. v. United States,
226 F. 3d 1349, 1357 (C.A. Fed. 2000)....................5

Broad Ave. Laundry and Tailoring v. U.S.,
681 F. 2d 746 (Ct. Cl. 1982)....................7, 9-10

Federal Crop Insurance Corp. v. Merrill,
332 U.S. 380, 384 (1947)....................9

Lucas v. United States,
25 Ct. Cl 298 , 304 (1992)....................11

Aviation Contractor Employees, Inc. v. U.S.,
945 F. 2d 1568 (Fed. Cir. 1991)....................12-13

American Elec. Laboratories v. United States,
774 F. 2d 1110, 1113 (Fed. Cir. 1985)....................15

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**JERRY C. MILLS, D/B/A**
**JCM TIMBER COMPANY,**

**Plaintiff,**

**vs.** **No. 05-216C**
**(Judge Braden)**

**THE UNITED STATES,**

**Defendant**

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, MOTION TO DISMISS COUNT TWO OF THE COMPLAINT**

COMES NOW, Plaintiff, JERRY C. MILLS, D/B/A JCM TIMBER COMPANY (hereinafter, "JCM"), pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC"), and files this, his Brief In Opposition To Defendant's Motion for Summary Judgment, Or, In the Alternative, Motion to Dismiss Count Two of the Complaint, and respectfully requests that the Court deny Plaintiff's motions for the reasons as set forth herein.

## ARGUMENT

### I. Standard of Review

Plaintiff agrees with the statement of the law as regarding the standard of review that this Court should follow regarding ruling on a motion for summary judgment. However, when there exists a genuine issue of material fact, and the evidence is such that a reasonable person could return a verdict for the non-movant, then summary judgment is improper. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) Plaintiff submits that genuine issue of material fact exists in this case, and the evidence as set forth herein, is such that a reasonable person could return a

verdict for Plaintiff, as non-movant. Plaintiff further submits that the law mandates that if the non-movant produces sufficient evidence to raise a question as to the outcome of the case, the summary judgment motion should be denied, and any doubt over the factual issues must be resolved in favor of the party opposing the motion, and to whom the benefits of all presumptions and inferences run. Thomas Creek Lumber & Log Co. v. United States, 36 Fed. Cl. 220, 235 (Fed Cl. 1996)

This case involves a government contract, and while Plaintiff recognizes that the interpretation of provisions of a government contract generally is a matter of law, Grunman Data Sys. Corp. v. Dalton, 88 F. 3d 990, 997 (Fed. Cir. 1996), there exists, in this case, genuine issues of material fact regarding whether a contract modification could have been validly effected, and whether such a modification actually was validly effected, a situation rendering a ruling of summary judgment improper. Further, a contract drafted by the government, as here, must be construed against it (the government), Roberts v. United States, 357 F. 2d 938, 948 (Ct. Cl. 1966), and when a party enters into a contract with the government, that party should reasonably expect to be on an equal legal footing with the government should a dispute over the contract arise. Southern California Edison Co. v. United States, 226 F. 3d 1349, 1357 (C.A. Fed. 2000)

Here, Plaintiff submits that the Contract at issue, which purportedly does not allow for any contract modifications (as discussed herein) should be construed against the government in terms of its interpretation, and any doubts over the factual issues regarding the contract at hand should be resolved in favor of Plaintiff, as non-movant. Plaintiff submits that he has produced sufficient evidence to raise questions about the outcome of the case, evidence consisting of the fact that a lawsuit filed which had the effect of enjoining all logging in the contract's subject

area, constituted a sufficient commercial frustration of purpose and impracticability of fulfillment of the contractual terms of logging, as contracted for by Plaintiff at the rates which were commiserate with market conditions prior to the suspension, unless these same rates were modified downward to reflect market conditions at the time in which Plaintiff could commence logging as contracted, after the suspension ended on February 25, 2003.

Due to the genuine issues of material fact that exist, as Plaintiff alleges herein, as to whether the Defendant government agency, U.S. Forest Service, had the authority to modify the contract so as to allow for the lower rates commiserate with market price, whether a valid contractual modification was present, and whether Plaintiff can recover out of pocket expenses as he alleged in his April 16, 2003 request, summary judgment would be improper in this case, since the questions which arise are not ones purely of law, and such issues raise questions as to the outcome of the case.

## II. <u>**Plaintiff has demonstrated that all the basic elements of a valid contractual modification are present and that said contract should be modified to the lower rates as offered by Defendant's agent on July 7, 2003, and the Government should be estopped from denying same**</u>

### A. Randall Smith's written offer of July 7, 2003, to modify the contract constituted a valid adjustment of rates in spite of the contractual language purportedly limiting such a modification to the three (3) conditions as expressed in CT 3.31, 3.312 and 3.32 of the Contract.

On June 3, 2003, in response to earlier conversation(s) regarding Plaintiff's desire to have his contractual timber rates modified downward to reflect the corresponding downturn in the timber market, a downturn which transpired in the interim between the time logging was ordered to be halted in October, 2000, and the resuming of the logging in February, 2003, Defendant, through its agent, Contracting Officer Randall W. Smith, offered a proposal for new contract

rates. This offer was in the form of the letter dated June 3, 2003 (Exhibit "G" of Plaintiff's Contract, and attached herein as Exhibit "1"), in which Mr. Smith stated expressly "now that I have approval from our office in Washington, D.C., I will soon be preparing an appraisal for this contract using standard FS procedures. The purpose will be determine new contract rates for the remaining timber." Plaintiff submits that this constituted a formal offer to modify the existing contract, and the fact of Randall Smith's communication to Plaintiff that he had "approval from (his) office in Washington, D.C." to modify the rates, reasonably caused Plaintiff's reliance upon same, and which gave him actual authority to modify such rates and to create a valid modification of Plaintiff's contract. (See Broad Ave. Laundry and Tailoring v. U.S., 681 F. 2d 746 (Ct. Cl. 1982), discussed *infra*.)

In response to said letter, Plaintiff agreed to have Defendant "continue to redetermine the contract rate for the remaining timber" in his letter of June 18, 2003 (Exhibit "H" of Plaintiff's Complaint and attached herein as Exhibit "2"). On July 7, 2003, Defendant, through its agent, Randall Smith, stated that "the appraisal part is completed. The contract rates, if all parties accept a settlement, will be revised to $92.04 for pine sawtimber, $31.62 for hardwood sawtimber, $9.41 for pine roundwood, and $3.96 for hardwood roundwood....." (Exhibit "I" of Plaintiff's Complaint and attached herein as Exhibit "3").

Defendant claims that the contract only allowed for an adjustment of rates in three (3) instances: 1) pursuant to a scheduled rate redetermination, 2) in case of environmental modifications under the Forest and Rangeland Renewable Resource Planning Act of 1974 or 3) after catastrophic damage to the timber. (In the Contract and designated as "Compl. App. B34-35, ¶ CT3.31, CT 3.312, CT 3.32 in Defendant's Brief) Defendant claims that none of these

situations is applicable to this case, and that the federal regulations governing timber sales at this time (July, 2003) provided for rate redeterminations "on sales of seven (7) years duration upon a predetermined schedule." 36 C.F.R. §223.33 (2003). However, 36 C.F.R. §223.33 (2003) actually provides that "sale contracts exceeding 7 years duration, and those of shorter duration to the extent found desirable by the approving officer, will provide for the redetermination of rates for stumpage and for required deposits at intervals at not more than 5 years, exclusive of any period allowed for the construction of improvements." (36 C.F.R. §223.33 (2003) attached herein) Plaintiff submits that this language does not explicitly exclude rate redeterminations for timber stumpage upon the occurrence of a supervening event, unforeseen by both contracting parties, such as the judicially ordered halting of logging on the tract at issue.

Further, Defendant claims that "prior to 2004, the regulations did not grant the contracting officer authority to provide for a rate redetermination to reflect changed market conditions when an existing timber sale contract was merely suspended because of administrative appeals or litigation." (Defendant's Brief, page 13) Defendant points out that 36 C.F.R. §223.112 was modified with (b) added in 2004 to effect the change as follows:

> Timber sale contracts awarded after October 1, 1995, that have been suspended for more than 90 days, during the normal operating season, at no fault of the purchaser, because of administrative appeals or litigation, that did not include contract provisions for rate redeterminations may be modified at the request of the timber sale purchaser to include a rate redetermination for the remaining unharvested volume to reflect significant decreases in market value during the period of delay. Rates in effect at the time of the suspension will be determined in accordance with the standard Forest Service methods in effect 45 days prior to the rate redetermination.
> 36 C.F.R. §223.112 (B) (2004)

Defendant claims that since this subpart (B) which gave explicit authority for the same type of modification as Plaintiff's modification, was added to the regulation at issue and promulgated on April 9, 2004, then it has no effect whatever on Defendant's offer to modify Plaintiff's rates on July 3, 2003, and the subsequent contract modification for the lower rates made on July 7, 2003. Plaintiff submits that the government Forest Service is bound by the statements of contracting officer Randall Smith on July 3 and 7, 2003 involving the offer to modify and the new rates, and is estopped from avoiding this modification at these lower rates for the following reasons.

It is recognized that in most situations before this Court where a government official or agent communicates information contrary to explicit statutory regulations to a private contractor, and by so doing, acts "outside of his authority," the government is not estopped by that erroneous representation, even though the agent may have been unaware of the limitations of his authority. Federal Crop Insurance Corp. v. Merrill, 332 U.S. 380, 384 (1947) However, Plaintiff submits that the case at hand is very much like that of Broad Ave. Laundry and Tailoring v. U.S., 681 F. 2d 746 (Ct. Cl. 1982), where this Court held that a contract modification (wage rate modification) made by a government official contrary to the current Department of Labor Regulations did bind the government to those modifications so made and the government was estopped from repudiation of the modifications. This Court, while acknowledging the prevailing rule of estoppel in most cases, distinguished the situation in Broad Ave. Laundry, by stating that central to the majority rule of estoppel is "the thesis.....that any order or commitment by a contracting officer based on an incorrect idea of the law is necessarily unauthorized. But this cannot be true." Broad Ave. Laundry, at 748. This Court then offered a hypothetical situation

where the contracting officer could have ordered a particular laundry service in the mistaken belief that the contract called for it, and such would have been valid and effective, even though based upon a mistake of law, since the government would have valid authority to effectuate this type of order, even if based upon a mistake of law. Id., at 749. This Court reasoned that unlike a situation where an order calls for illegal action (such as race discrimination, etc.), or where a mere oral recommendation is given, a contracting officer has actual authority to embody mistakes of law in his or her decisions and the government is estopped, having endowed him or her with the powers it has to assert otherwise. Id, at 749.

Plaintiff submits that the present case is analogous. Here, as in Broad Ave. Laundry, the offer of the contract modifications of July 7, 2003, was made due to a mistake in the law (that being that the Forest Service had no explicit authority to modify timber contract rates at this time in this situation, a "mistake" which Plaintiff disputes as such) and upon which Plaintiff relied. The contracting officer, Randall Smith, was endowed with the power to make rate modifications expressly allowed by the contractual language, and the fact that he may have mistakenly offered rates when no such *express* allowance was authorized at the time, should create a valid modification nonetheless. Further, there is nothing "illegal" about the modification of July 7, 2003, only a valid question of whether contracting officer Smith had the express authorization to make a valid modification of rates at the time, as opposed to April 9, 2004, when such express authorization became obvious. Plaintiff submits that for the foregoing reasons, contracting officer Randall Smith's written offer of July 7, 2003, to modify the contract constituted a valid adjustment of rates in spite of the contractual language purportedly limiting such a modification,

due to the fact that such offer was in no way "illegal" and would have been valid and effective if performed by both parties, and the same was relied upon by Plaintiff.

### B. All of the basic elements of a valid contractual modification: offer, acceptance and consideration are present in this case.

Defendant claims that no valid contractual modification occurred in 2003, because the necessary ingredients for such a modification, offer, acceptance and consideration were not present. However, Defendant cites Lucas v. United States, 25 Ct. Cl 298 , 304 (1992), for the proposition that a true offer to contract is "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." It is asserted that none of the documents referenced by Plaintiff, including the letters of June 3 and July 7, 2003, meet this qualification so as to constitute a valid offer. However, it is clear from the language of the letter of June 3, 2003 sent by contracting officer Randall Smith (attached herein, *supr*a), that Defendant certainly manifested its willingness to enter into the bargain to prepare "an appraisal for this contract using standard FS procedures." Further, it is stated, "If we come to an agreement in these two matters, I will prepare an Agreement to Modify the Contract to formally establish the new rates (i.e. the rates in the July 7, 2003 letter)." Plaintiff submits that this is a clear offer to modify the existing rates, an offer which would be accepted by Plaintiff's assent to that bargain. This assent was made in Plaintiff's letter to Randall Smith, dated June 18, 2003 (also attached herein, *supra*), in which Plaintiff states that "Mr. Mills desires to have you continue to redetermine the contract rate for the remaining timber."

Defendant asserts that Randall Smith's June 3, 2003 letter was not a valid offer, in itself, apart from a separate agreement which would be prepared to modify the contract. Plaintiff, however, submits that an offer was formed which was accepted by Plaintiff on June 18, 2003, and the "Agreement to Modify the Contract" referenced in Defendant's offer, and which was sent by Defendant to Plaintiff only on May 7, 2004, after the express promulgation of April 9, 2004, granting modification authority, constituted a reaffirmation of Plaintiff's acceptance of June 18, 2003. The fact that this new "Agreement" contains the higher rates, should not be dispositive of the purported validity of these rates, since they were not the rates originally bargained for, and Plaintiff signed the Agreement of May 7, 2004, while in a position of greatly unequal bargaining power with Defendant, United States Government. Hence, Plaintiff submits that the old rates accepted by Plaintiff on June 18, 2003 as to Defendant's offer of June 3, 2003, should be considered by this Court to be the contracted-for rates, and the ones for which Defendant should abide as both parties intended at the time of the initial modification of the Contract.

Finally, Plaintiff submits that sufficient consideration was present in the July, 2003 modification of the Contract so as to establish its validity, since Plaintiff's "pre-existing duty" to pay the down payment price of $36,421.33 on August 1, 2003, was genuinely subject to an honest dispute, due to the fact that Plaintiff could not carry out any logging on his land, the purpose for which the Contract was created in the first place, due to the injunction. In the case which Defendant cites for support of their position that contract modifications are not sufficiently supported by consideration if the Plaintiff receives a benefit and the government does not, Aviation Contractor Employees, Inc. v. U.S., 945 F. 2d 1568 (Fed. Cir. 1991), the Federal Circuit

Court of Appeals actually found that the Government had not proven that no consideration existed in a situation where plaintiffs who provided flight training for student pilots in the armed forces received a contract modification of price terms due to additional cost factors. In Aviation Contractor Employees, the Court of Appeals remanded this question of whether sufficient consideration had existed, since the modification itself, sought by plaintiffs, was a subject of honest dispute and in doubt. Therefore, in that case, the question remained as to whether the "pre-existing duty rule" which usually precludes a finding of valid consideration where the detriment which flows from one of the contracting parties is merely a "pre-existing duty" for which that party is already obligated to perform, applied. Id, at 1574.

Plaintiff submits that the same is true here. Although Defendant asserts that the language mandating Plaintiff to pay the down payment and stating that "failure to pay is a material breach of the contract" in the July 11, 2003 letter, unequivocally created this obligation, Plaintiff submits that because of the unique situation of the injunction halting all logging on the contract, Defendant's language requiring Plaintiff to pay without receiving the benefit of his bargain, does not, of itself, create a "pre-existing" duty which legally bound Plaintiff to pay that sum at that time. At the very least, Plaintiff submits that such a duty to pay was "in doubt" and "open to honest dispute" due to the injunction which stopped all of the logging on the tract at issue.

## III. Plaintiff should be compensated for road construction costs due to assurances by agents for Defendant that he would receive credit, and Defendant is estopped from denying these assurances.

Plaintiff, while conceding the plain language of Contract provision CT 6.01 which denies recovery of Plaintiff's costs due to the delay in operations caused by the injunction stopping the logging on Plaintiff's tract, submits that CT 6.01 does not preclude recovery for Plaintiff's cost

of road construction. As pointed out in Defendant's Motion, Plaintiff's claim for his cost of road construction in the amount of $101,855.09 was denied by Defendant in its letter of November 12, 2004. (Def. App. 2-6) In this letter, Defendant denied this road construction cost amount "because the road cost was considered during our appraisal process, and this cost was reflected by lower advertised rates." (Def. App. 3, and attached herein as Exhibit "4", p. 4) This denial letter references CT. 6.01 (c) (ii) which permits recovery of costs "incurred as a direct result of interruption or delay of operations."

Further, as shown in his Response to Defendant's Proposed Findings of Uncontroverted Fact, Plaintiff admits the "plain language" of the Request for Bids that stated that "[t]he advertised rate does not include the estimated cost of specified road construction. The estimated road construction cost has been included in the appraisal as a cost that the purchaser will incur. The purchaser will be responsible for the road construction cost and WILL NOT receive credit towards stumpage costs for this expense, i.e. THIS SALE DOES NOT INCLUDE PURCHASER CREDIT and bidders should consider the cost of road construction when developing their bids." However, Plaintiff submits that he *wa*s led to believe that he would receive credit towards stumpage costs and that the sale *did* include purchaser credit, through verbal assurances as made by Defendant's agent, Jerry Holliday, at the time of contracting.

Attached for the Court's consideration as Exhibit "5" is the Affidavit of Plaintiff, JERRY MILLS, in which Plaintiff avers that he was verbally assured by agent of Defendant, Jerry Holliday, Road Engineer and Inspector for the Forest Service immediately prior to the signing of the Contract, that Defendant would supply Plaintiff with timber credits in conjunction with building the roads required in this contract. Plaintiff relied on the assurances made by Mr.

Holliday that the latter units of the sale would be paid from credits given upon completion and acceptance by Mr. Holliday of these required roads. Plaintiff submits that this is why he elected not to check Box #18 located on Page 3 of 11 of the Timber Sale Prospectus. In short, Plaintiff submits that these verbal assurances of agent for Defendant led Plaintiff to believe that he would receive these timber credits, hence he did not specify that Defendant would build the roads for him, and Defendant is estopped from denying Plaintiff's reliance on its assurances so made.

In considering estoppel claims such as the one at hand involving private parties contracting with the government, the Court of Appeals, Federal Circuit has determined that four elements must be present to establish an estoppel: (1) the party to be estopped must know the facts......; (2) the government must intend that the conduct alleged to have induced continued performance will be acted on, or the contractor must have a right to believe the conduct in question was intended to induce continued performance; (3) the contractor must not be aware of the true facts.........; and (4) the contractor must rely on the government's conduct to its detriment. American Elec. Laboratories v. United States, 774 F. 2d 1110, 1113 (Fed. Cir. 1985)

It is submitted that, in this case, Defendant, Forest Service, knew of the fact that Plaintiff was a small business and would have faced an economic burden to construct all of the roads needed for the carrying out of the logging under the contract, without a corresponding credit from the government, and in case of interruption or delay of the contract due to circumstances as occurred here. It is also submitted, that as to this point, contrary to Defendant's claim that "JCM cannot demonstrate that the incurred cost of road construction was a direct result of the interruption of the contract," Plaintiff was forced to lose over a hundred thousand dollars as a direct result of the contract interruption because he had already spent his own money for the

roads under the contract, counting on the government's verbal assurances for reimbursement, and was unable to use the roads for two and a half years until the legal suspension had ended.

Further, Plaintiff submits that Defendant certainly believed that the assurances of its agent, Jerry Holliday, for Plaintiff to "don't worry about the roads," would have induced Plaintiff to go ahead with the contract and act on these assurances, believing that he would be credited for construction of same. Plaintiff avers that he was not aware of the fact that no credits would be forthcoming and that he acted on this misinformation to his detriment.

Plaintiff, accordingly, requests that this Court grant his request for reimbursement of his road construction costs of $101,855.09 as this is not excluded by the plain language of the Contract and the Plaintiff relied on Defendant's assurances that he would be credited for his construction of the roads and Defendant is estopped from denying the assurances.

## CONCLUSION

Plaintiff concedes Defendant's Motion to Dismiss Count Two of Plaintiff's Complaint, i.e. that of Specific Performance. However, for the reasons as asserted herein, Plaintiff respectfully requests that this Court deny the rest of Defendant's Motion for Summary Judgment.

Respectfully Submitted,

Plaintiff, JERRY C. MILLS, D/B/A
JCM TIMBER COMPANY

S// AL SHIYOU
AL SHIYOU, MSB #6760
Attorney for Plaintiff

AL SHIYOU
ATTORNEY-AT-LAW
P. O. BOX 310
HATTIESBURG, MS 39403
(601) 583-6040
MSB NO. 6760

**CERTIFICATE OF SERVICE**

I, Al Shiyou, Attorney for the Plaintiff, do hereby certify that I have this day electronically filed the forgoing Opposing Brief with the Clerk of this Court using the ECF system which sent notification of such filing to the following:

Hon. Steven M. Mager
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L Street, NW
Washington, D.C. 20530

Attorney for Defendant, United States

This the 18th day of August, 2005.

S// AL SHIYOU
AL SHIYOU

# APPENDIX

## Index to Appendix


| DOCUMENT | | PAGES |
|---|---|---|
| Exhibit "1" | June 3, 2003 Letter from Randall W. Smith to Jerry Mills | 1 |
| Exhibit "2" | June 18, 2003 Letter from counsel for Jerry Mills to Randall W. Smith | 2 |
| Exhibit "3" | July 7, 2003 Letter from Randall W. Smith to Jerry Mills | 3 |
| Exhibit "4" | November 12, 2004 Letter from Lynn D. Corbitt to Jerry Mills | 4-8 |
| Exhibit "5" | Affidavit of Jerry Mills | 9 |