**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**JERRY C. MILLS, D/B/A**
**JCM TIMBER COMPANY,**

**Plaintiff,**

**vs.** **No. 05-216C**
**(Judge Braden)**

**THE UNITED STATES,**

**Defendant**

**PLAINTIFF'S RESPONSE TO DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT**

COMES NOW, Plaintiff, JERRY C. MILLS, D/B/A JCM TIMBER COMPANY, pursuant to Rule 56 (d) (2) of the Rules of the United States Court of Federal Claims, and respectfully submits, this, his Response to Defendant's Proposed Findings of Uncontroverted Fact:

1. On or about March 1, 2000, United States Department of Agriculture, Forest Service (the "Forest Service") issued a request for sealed bids for the advertised sale of timber located in the Desoto National Forest, Chickasawhay Ranger District in Greene County, Mississippi ("request for bids").

   **Plaintiff agrees with the finding as stated.**

2. The request for bids provided that the awardee would be required to construct several specified roads under the contract.

   **Plaintiff agrees with the finding as stated.**

3. The request for bids permitted small businesses to opt to have the Forest Service construct the specified roads, stating that "Bidders qualifying as small business

concerns under the Small Business Act may, when submitting a bid, elect for the Forest Service to build permanent roads."

**Plaintiff agrees with the finding as stated.**

4. The request for bids provided that the failure to make such an election could not be changed subsequent to the opening of bids.

**Plaintiff agrees with the finding as stated.**

5. Plaintiff Jerry C. Mills, doing business as JCM Timber Company ("Plaintiff" or "JCM"), did not indicate in his response to the request for bids that he wished to have the Forest Service construct the specified roads.

**Plaintiff proposes the following revision to the finding as stated:**

> **Plaintiff Jerry C. Mills, doing business as JCM Timber Company ("Plaintiff" or "JCM"), did not physically check the box as located in Box #18 located on Page 3 of 11 of the Timber Sale Prospectus ("Road Construction Option") to indicate, purportedly, in his response to the request for bids, that he wished to have the Forest Service construct the specified roads.**

6. The request for bids stated that "[t]he advertised rate does not include the estimated cost of specified road construction. The estimated road construction cost has been included in the appraisal as a cost that the purchaser will incur. The purchaser will be responsible for the road construction cost and WILL NOT receive credit towards stumpage costs for this expense, i.e. THIS SALE DOES NOT INCLUDE PURCHASER CREDIT and bidders should consider the cost of road construction when developing their bids."

**Plaintiff proposes the following revision to the finding as stated:**

> **The request for bids stated that "[t]he advertised rate does not include the estimated cost of specified road construction. The estimated road construction cost has been included in the appraisal as a cost that the purchaser will incur. The purchaser will be responsible for the road construction cost and WILL NOT receive credit towards stumpage costs for this expense, i.e. THIS SALE DOES NOT INCLUDE PURCHASER CREDIT and bidders should consider the cost of road construction when developing their bids." However, Plaintiff was verbally assured by one of the engineers for the U.S. Forest Service present at the signing of the contract on March 15, 2000, Jerry Holloway, to the effect of "don't worry about the roads" and that the Forest Service would either assist Plaintiff in the construction of the specified roads or provide Plaintiff with a credit towards the specified roads Plaintiff would construct on his own.**

7. Pursuant to the request for bids, on or about March 15, 2000, JCM was awarded (the) timber sale contract (the "contract") #303599.

**Plaintiff agrees with the finding as stated.**

8. The contract set the bid rates (flat) for timber as follows:

| | |
|---|---|
| Pine Sawtimber | $138.00 per CCF |
| Hardwood Sawtimber | $ 18.00 per CCF |
| Pine Small Roundwood | $ 29.00 per CCF |
| Hardwood Small Roundwood | $ 3.00 per CCF |

**Plaintiff agrees with the finding as stated.**

9. The contract allowed for an adjustment of rates in three prescribed instances: 1) pursuant to a scheduled rate redetermination, 2) because of environmental modifications under the Forest and Rangeland Renewable Resource Planning Act of 1974 (16 U.S.C. §1600), or 3) after catastrophic damage to the timber.

**Plaintiff proposes the following revision to the finding as stated:**

> **The contract allowed for an adjustment of rates, three (3) of which were prescribed as follows: 1) pursuant to a scheduled rate redetermination, 2) because of environmental modifications under the Forest and Rangeland Renewable Resource Planning Act of 1974 (16 U.S.C. §1600), or 3) after catastrophic damage to the timber.**

10. There were no scheduled rate redeterminations under the contract.

**Plaintiff agrees with the finding as stated.**

11. The emergency rate redetermination clause was not applied to the contract at issue in this case.

**Plaintiff agrees with the finding as stated.**

12. On or about July 19, 2000, JCM completed construction of the roads specified in the request for bids and the contract.

**Plaintiff agrees with the finding as stated.**

13. On October 20, 2000, the Forest Service suspended performance of the contract, pursuant to section CT. 6.01 (a) of the contract.........Specifically, the contracting officer stated that:

> ...the Sierra Club has filed a lawsuit against the Forest Service. Pursuant to contract provision CT 6.01 (a), this is your notice to suspend all logging operations on the timber sales contract. Because the complaint specifically names the project analysis and decision documents responsible for this timber sale, which implements a portion of that project decision, I will not allow logging to proceed pending action by the court.

**Plaintiff agrees with the finding as stated.**

14. Section CT 6.01 of the contract provided:

Interruption Or Delay Of Operations. (10/96) Purchaser agrees to interrupt or delay operations under this contract, in whole or in part, upon the written request of the Contracting Officer:
(a) To prevent serious environmental degradation or resource damage that may require contract modification under CT8.3 or termination pursuant to CT8.2;
(b) To comply with a court order, issued by a court of competent jurisdiction; or
(c) Upon determination of the appropriate Regional Forester, Forest Service, that conditions existing on this sale or the same as, or nearly the same as, conditions existing on sale(s) named in such an order described in (b).

Purchaser agrees that in the event of interruption or delay of operations under this provision, that its sole and exclusive remedy shall be (i) Contract Term Adjustment pursuant to BT 8.21, or (ii) when such an interruption or delay exceed 30 days during the Normal Operating Season, Contract Term Adjustment pursuant to BT 8.21, plus out-of-pocket expenses incurred as a direct result of interruption or delay of operations under this provision. Out-of-pocket expenses do not include lost profits, attorney's fees, replacement cost

of timber, or any other anticipatory losses suffered by Purchaser. Purchaser agrees to provide receipts or other documentation to the Contracting Officer which clearly identify and verify actual expenditures.

**Plaintiff agrees with the finding as stated.**

15. The definition of "out of pocket expenses" found in CT 6.01 explicitly excluded lost profits, attorney's fees, replacement cost of timber or any other anticipatory losses.

**Plaintiff agrees with the finding as stated.**

16. On December 4, 2000, the Forest Service refunded a portion of JCM's down payment, in the amount of $35,600 to JCM, pursuant to CT 4.229.

**Plaintiff proposes the following revision to the finding as stated:**

> **On December 4, 2000, the Forest Service sent a letter to Plaintiff, stating that Plaintiff's request for a refund of the down payment and incurred road costs could be partially approved, and that after $1,000 was to be kept on deposit, the remaining $35,600 was "in the process of being refunded to you."**

17. In the December 4, 2000 letter, the contracting officer stated that the refunded portion of JCM's down payment would need to be restored prior to resuming logging operations under the contract.

**Plaintiff agrees with the finding as stated.**

18. In the December 4, 2000 letter, the contracting officer stated that he was retaining $1,000 of JCM's deposit, pursuant to CT 4.229.

**Plaintiff agrees with the finding as stated.**

19. On or about December 4, 2000, the contracting officer refunded to JCM an

unencumbered balance of $2,898.16.

**Plaintiff agrees with the finding as stated.**

20. Section CT 4.229 of the contract provided, in part,

> When, pursuant to CT 6.01...., Contracting Officer requests Purchaser to interrupt or delay all or any portion of Purchaser's operations under the contract for more than 60 consecutive days, the down payment amount being held on deposit may be temporarily reduced upon the written request of the Purchaser or at the discretion of the Contracting Officer. For the period of the interruption or delay, the down payment on deposit may be reduced to $1,000.......
>
> ........Upon Purchaser's receipt of Bill for Collection and written notice from Contracting Officer that the basis for the interruption or delay no longer exists, Purchaser shall restore the down payment to the full amount shown in CT 4.220# within 30 days after the date the Bill for Collection was issued. Purchaser shall not resume contract operations until the down payment amount is fully restored. Purchaser's failure to fully restore the down payment amount within 30 days after the date the Bill for Collection was issued is a material breach of the contract. Purchaser shall have 30 days to remedy the breach or the contract will be terminated.

**Plaintiff agrees with the finding as stated.**

21. On or about February 25, 2003, the contracting officer informed JCM that the suspension put in place on October 20, 2000 was lifted.

**Plaintiff agrees with the finding as stated.**

22. In the February 25, 2003 letter, the contracting officer provided that logging operations could resume as soon as JCM restored the balance of the down payment required by the contract.

**Plaintiff agrees with the finding as stated.**

23. In the February 25, 2003 letter, the contracting officer noted that the termination date of the contract had been adjusted to April 11, 2005 to reflect the lost time.

**Plaintiff agrees with the finding as stated.**

24. On or about April 16, 2003, JCM sent a certified claim letter to the contracting officer.

**Plaintiff agrees with the finding as stated.**

25. In its April 16, 2003 certified claim letter, JCM asserted that timber prices had fallen dramatically during the suspension, that JCM had been advised that it was unlikely to receive a rate redetermination, and that as a result of the "handling of this matter and the loss of the contract," JCM had suffered a loss of $173,961.31.

**Plaintiff agrees with the finding as stated.**

26. In its April 16, 2003 certified claim letter, JCM's alleged costs included:

| | |
|---|---|
| Cost of construction of the road | $101,855.09 |
| Interest on the construction cost | $ 16,095.42 |
| Loss of interest on down payment | $ 3,125,80 |
| Road taxes due to the State of MS. | $ 4,245.00 |
| Labor and equipment costs | $ 2,640.00 |
| Timber Cruise | $ 1,000.00 |
| Lost Profits | $ 40,000.00 |
| Attorney's Fees | $ 10,000.00 |
| **TOTAL:** | **$178,961.31** |

**Plaintiff agrees with the finding as stated.**

27. In its April 16, 2003 certified claim letter, JCM did not indicate the portion of the contract which permitted it to recover all such costs in the event of suspension.

**Plaintiff agrees with the finding as stated.**

28. In its April 16, 2003 certified claim letter, JCM erred in asserting that it had "lost" the contract.

**Plaintiff proposes the following revision to the finding as stated:**

> **In its April 16, 2003 certified claim letter, JCM asserted that "as a result of the handling of this matter, and the loss of the contract, Mr. Mills has incurred the following losses......"**

29. On or about May 14, 2003, the Forest Service sent a follow up letter regarding repayment of the deposit, and a past due bill for collection in the amount of $35,743.67, which included $118.67 in interest and $25.00 for administrative costs.

**Plaintiff agrees with the finding as stated.**

30. The due date for this bill was June 13, 2003.

**Plaintiff agrees with the finding as stated.**

31. On or about June 3, 2003, the contracting officer sent a letter to JCM stating that he would prepare an appraisal to determine the new proposed contract rates.

**Plaintiff agrees with the finding as stated.**

32. In the June 3, 2003 letter, the contracting officer provided that JCM could submit a claim for out-of-pocket expenses incurred during the suspension period.

**Plaintiff agrees with the finding as stated.**

33. In the June 3, 2003 letter, the contracting officer stated: "If we come to an agreement in these two matters, I will prepare an Agreement to Modify the Contract to formally establish the new rates. This Agreement would include a stipulation that you would relinquish any future claims pertaining to this particular situation."

**Plaintiff agrees with the finding as stated.**

34. On or about June 18, 2003, JCM responded that it desired to have the Forest Service redetermine the contract rate for unharvested timber.

**Plaintiff agrees with the finding as stated.**

35. In its June 18, 2003 letter, JCM noted that "upon completion of the redetermination, Mr. Mills is prepared to pay the contract down payment."

**Plaintiff proposes the following revision to the finding as stated:**

> **In its June 18, 2003 letter, JCM noted that "upon completion of the redetermination, Mr. Mills is prepared to pay the contract down payment, *if the redetermined rates are acceptable."* (Emphasis added)**

36. In its June 18, 2003 letter, JCM indicated that it had set forth its claim for expenses in the April 10, 2003 letter.

**Plaintiff proposes the following revision to the finding as stated:**

> **In its June 18, 2003 letter, JCM indicated that it had set forth its claim for expenses in the *April 16, 2003 letter.* (Emphasis added)**

37. On or about July 7, 2003, the contracting officer sent a letter to JCM indicating that he was still processing JCM's claim.

**Plaintiff agrees with the finding as stated.**

38. On or about July 7, 2003, the contracting officer indicated that he had completed a reappraisal of the base rates under the contract, and quoted the anticipated contract rates that he believed would apply "if all parties accept a settlement."

**Plaintiff agrees with the finding as stated.**

39. The contracting officer did not enclose any agreement to modify the contract with the July 7, 2003 letter.

**Plaintiff agrees with the finding as stated.**

40. On or about July 11, 2003, the contracting officer sent another follow up letter regarding repayment of the deposit, and a past due bill for collection in the amount of $36,421.33, which included $227.33 in interest, $50.00 for administrative costs, and a $534.00 penalty.

**Plaintiff proposes the following revision to the finding as stated:**

> **On or about July 11, 2003, the contracting officer sent another follow up letter regarding repayment of the deposit, and a past due bill for collection in the amount of $36,421.33, which included *$237.33* in interest, $50.00 for administrative costs, and a $534.00 penalty. (Emphasis added)**

41. In the July 11, 2003 letter, the contracting officer noted that the failure to repay the deposit would be a material breach of the contract pursuant to section BT9.3 of the contract, and that he had "no authority under the contract to delay payment until settlement is resolved."

**Plaintiff agrees with the finding as stated.**

42. In his July 11, 2003 letter, the contracting officer explicitly stated that JCM had "30 calendar days to remedy this breach or the contract will be terminated."

**Plaintiff agrees with the finding as stated.**

43. On or about August 1, 2003, JCM paid the July 11, 2003 past due bill for collection in the amount of $36,421.33.

**Plaintiff agrees with the finding as stated.**

44. On or about May 7, 2004, the contracting officer sent a proposed agreement to modify the contract to JCM.

**Plaintiff agrees with the finding as stated.**

45. The May 7, 2004 agreement to modify proposed amending the contract to incorporate a new interim rule that permitted the modification of rates due to contract suspension.

**Plaintiff agrees with the finding as stated.**

46. The May 7, 2004 agreement to modify proposed modifying the bid rates in the contract, using standard Forest Service techniques:

| | |
|---|---|
| Pine Sawtimber | $138.00 per CCF |
| Hardwood Sawtimber | $ 18.00 per CCF |
| Pine Small Roundwood | $ 11.91 per CCF |
| Hardwood Small Roundwood | $ 3.00 per CCF |

**Plaintiff agrees with the finding as stated.**

47. Section BT8.3 of the contract explicitly permitted the Forest Service to modify the contract to provide for the "exercise of any authority hereinafter granted by law or Regulation of the Secretary of Agriculture if such authority is then generally being applied to Forest Service timber sale contracts."

**Plaintiff agrees with the finding as stated.**

48. On or about May 21, 2004, JCM responded to the May 7, 2004 proposed agreement to modify, asserting that the rates in the May 7, 2004 agreement were not consistent with the rates mentioned in the July 7, 2003 letter.

**Plaintiff agrees with the finding as stated.**

49. On or about July 7, 2004, the contracting officer replied to JCM's concerns regarding the proposed agreement to modify, noting that the July 7, 2003 rates were merely tentative rates, which could not have been finalized until the Forest Service received the authority to do redeterminations as a result of delay.

**Plaintiff agrees with the finding as stated.**

50. In the July 7, 2004 letter, the contracting officer noted that no agreement to modify the contract (Form FS-2400-9) had been previously signed by the parties.

**Plaintiff agrees with the finding as stated.**

51. In the July 7, 2004 letter, the contracting officer stated that if he did not hear from JCM by July 14, 2004, he would assume that JCM was not interested in modifying the contract.

**Plaintiff agrees with the finding as stated.**

52. Between July 7, 2003 and July 14, 2003, JCM had harvested no timber under the contract. Def. App. 20.

**Plaintiff proposes the following revision to the finding as stated:**

> **Between July 7, 2003 and July 14, 2003, the Forest Service alleges that JCM had harvested no timber under the contract.**

53. On or about July 14, 2004, JCM signed the May 7, 2004 agreement to modify contract.

**Plaintiff agrees with the finding as stated.**

54. The signed agreement modified the contract bid rates to:

| | |
|---|---|
| Pine Sawtimber | $138.00 per CCF |
| Hardwood Sawtimber | $ 18.00 per CCF |
| Pine Small Roundwood | $ 11.91 per CCF |

| | |
|---|---|
| Hardwood Small Roundwood | $ 3.00 per CCF |

**Plaintiff proposes the following revision to the finding as stated:**

**The signed agreement *purported to* modified the contract bid rates to:**

| | |
|---|---|
| **Pine Sawtimber** | **$138.00 per CCF** |
| **Hardwood Sawtimber** | **$ 18.00 per CCF** |
| **Pine Small Roundwood** | **$ 11.91 per CCF** |
| **Hardwood Small Roundwood** | **$ 3.00 per CCF** |

55. On or about November 12, 2004, the contracting officer issued a final decision with regard to JCM's $178,961.31 claim for damages allegedly incurred as a result of the interruption of the contract.

**Plaintiff agrees with the finding as stated.**

56. In the November 12, 2004 final decision, the contracting officer granted JCM's claim for labor and equipment costs in full ($2,640.00) as a move-in and move-out cost.

**Plaintiff agrees with the finding as stated.**

57. In the November 12, 2004 final decision, the contracting officer denied JCM's claims for costs related to road construction, interest upon the construction cost, lost interest upon the down payment, road taxes due to the state of Mississippi, timber cruise, lost profits, and attorney's fees, upon the grounds that these costs were not out-of-pocket expenses incurred as a direct result of the interruption.

**Plaintiff agrees with the finding as stated.**

58. The contract at issue in this case is still pending, and JCM is able to harvest timber at the agreed modified rate under the contract.

**Plaintiff agrees with the finding as stated.**

59. The current expiration date on the contract is November 30, 1997.

**Plaintiff agrees with the finding as stated.**

Respectfully Submitted,

Plaintiff, JERRY C. MILLS, D/B/A
JCM TIMBER COMPANY

S// AL SHIYOU
AL SHIYOU, MSB #6760
Attorney for Plaintiff

AL SHIYOU
ATTORNEY-AT-LAW
P. O. BOX 310
HATTIESBURG, MS 39403
(601) 583-6040
MSB NO. 6760

**CERTIFICATE OF SERVICE**

I, Al Shiyou, Attorney for the Plaintiff, do hereby certify that I have this day electronically filed the forgoing with the Clerk of this Court using the ECF system which sent notification of such filing to the following:

Hon. Steven M. Mager
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L Street, NW
Washington, D.C. 20530

Attorney for Defendant, United States

This the 18th day of August, 2005.

S// AL SHIYOU
AL SHIYOU